### KING v. BOYCE, trustee, et al.

There was no equity in the petition, and the court did not err in sustaining the demurrer thereto.

Submitted February 24, — Decided April 13, 1898.

Equitable petition. Before Judge Harris. Coweta superior court. March term, 1897.

*W. A. Turner*, for plaintiff.
*Freeman & Wright* and *L. M. Farmer*, for defendants.

SIMMONS, C. J. We have several times read the petition in this case, and thus attempted to arrive at the design of the pleader. The petition contains many averments which are confused and disconnected. It is difficult to reach a conclusion as to the equity which the plaintiff seeks. As far as we can understand the allegations in the petition, they make this case: In the year 1864 plaintiff's father, Welch, purchased certain land from Samuel Sewell, who was the grantee under a deed from Pierce Sewell. The deeds by which these two conveyances were made were lost or destroyed, and there is no record of either of them. In 1866 plaintiff's father procured a deed from Pierce Sewell, the original grantor, to the petitioner's husband, King, without King's knowledge or consent. In 1867 she and her husband entered upon the land as tenants of her father, and in that year her husband and her father made a contract by which the former was to purchase the land, the father removing to another county. In 1869 she owned a tract of land in Campbell county of the value of $750, and this she exchanged with her father for a part of the land in dispute,

giving a receipt to him which stated that it was for "seven hundred and fifty dollars ($750.00) in the premises where we now reside, in payment of our interest in the premises bought of A. G. Hulsey, in Campbell county, Georgia, where the said Welch now resides." This receipt was signed by petitioner and her husband. The petition further alleged, that petitioner and her husband had occupied this land from that time to the present; that in 1890 her husband borrowed money from one Boyce and made him a security-deed to the land, under the provisions of the code; that she did not know of this deed until some time thereafter; that her husband had also sold other portions of the land to different parties; that Reid, executor of Hutchinson, had a judgment against King, which had been levied upon this land, and also upon some personal property which was purchased with the proceeds of crops raised on the land. She prayed for an injunction against Reid and against Boyce; that decree be had placing the title to 150 acres of the land in her; that the deed from Pierce Sewell to King be canceled; for general relief, and for further special relief not necessary here to be set out.

The above is the best condensation we can make of the petition. The court dismissed the petition, upon demurrer, for want of equity. This we think was not error. It seems to us that this is an effort upon the part of a wife, after her husband has become embarrassed with debt, to claim property which belonged to him. According to the allegations of the petition, the husband had a deed to this land made to him by Pierce Sewell in 1866; he had control of the land, and he used it as his own for at least twenty-seven years after her alleged purchase from her father. The husband has lived upon the land, cultivated it, and doubtless exercised all the acts of ownership and control which a man usually has over his own land. He had made a contract with her father to purchase it; and one of her allegations not mentioned above was, that the husband paid part of the purchase-money. He borrowed money and gave a deed to part of the land as security for the debt. She alleges that this was done without her knowledge or consent; but at least she made no effort, when she ascertained it, to fix the

title in herself or to give any one notice of her claim to the land.  If she ever had any legal claim to the land, we think she slept over her rights by waiting twenty-seven years before she undertook to assert them, nor did she do so then until her husband became greatly embarrassed.  The deed from Sewell to King, made by the procurement of Welch, gave King a good prescriptive title against the father, and even the true owner after seven years adverse possession.  The father, having procured the deed to be made, had no right or title to convey thereafter to his daughter.  The husband's possession for more than twenty years, even without color of title, would give him a good prescriptive title against the world, if such possession was adverse, peaceable, and uninterrupted.  The plaintiff, knowing all these facts, waited twenty-seven years before she attempted to set up her claim to the land, and equity will not now relieve her, when, on account of her negligence and laches, the rights of other parties have accrued.

*Judgment affirmed.  All concurring, except Cobb, J., absent.*